IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ROWE,<br><br>            Plaintiff,<br><br>     v.<br><br>M. CASTRO, et al.,<br><br>            Defendants. | NO. 1:07-cv-01150-GSA-PC<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br>(ECF No. 43) |

Plaintiff is a state prisoner proceeding pro se in this civil rights action. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff has opposed the motion.[1]

**I.    Relevant Procedural History**

The original complaint in this action was filed on August 8, 2007. On April 29, 2008, an order was entered, dismissing the complaint and granting Plaintiff leave to file an amended complaint. On May 22, 2008, Plaintiff filed a first amended complaint. The first amended complaint set forth claims of retaliation, interference with legal mail, deprivation of property and denial of administrative grievance claims. On January 27, 2009, an order was entered, advising Plaintiff that the first amended complaint stated a claim against Defendants Castro and Frescura

---

[1] On March 5, 2009, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 16.)

for retaliation, but failed to state any other claims.  Plaintiff was provided with an opportunity to either file an amended complaint or proceed against Defendants Castro and Frescura on his retaliation claim.  On February 9, 2009, Plaintiff filed a notice, advising the Court that he intends to proceed only on the claims found to be cognizable.  This action therefore proceeds against Defendants Castro and Frescura on Plaintiff's retaliation claim.

**II.     Allegations**

The first amended complaint alleges that Defendants Castro and Frescura began to read, censor, and withhold Plaintiff's personal and legal mail in order to retaliate against Plaintiff for exercising his First Amendment right to file lawsuits and prison grievances.  Specifically, Plaintiff alleges that "Castro and Frescura have also censored and held my mail, legal, and regular personal mail in retaliation of bringing litigations and other complaints in the institution, and for punishment of my cell light being turned off."  (Am. Compl. ¶ IV.)

**III.    Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, of any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

1 | issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

2 | **IV.  Retaliation**

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

In order to meet their burden on summary judgment, Defendants must come forward with evidence that they did not censor, read, or withhold Plaintiff's personal and legal mail in retaliation for Plaintiff's filing of inmate grievances. Specifically, Defendants must come forward with evidence that Plaintiff did not suffer harm as a result of their actions, and that their actions served a legitimate correctional purpose. Rhodes, 408 F.3d at 567, n. 11; Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Defendants support their motion with the declarations of Defendants Castro and Frescura, as well as the deposition of Plaintiff.

In 2006, Plaintiff was housed in the secured housing unit (SHU) at CSP Corcoran, and Defendants were the floor officers of the unit during third watch. (Rowe Dep. 111:6-9, attached as Ex. A to Esquivel Decl.; Castro Decl. ¶ 2; Frescura Decl. ¶ 2.)  Defendants' duties as floor officers included distributing incoming mail and collecting outgoing mail from inmates. (Castro Decl. ¶ 2; Frescura Decl. ¶¶ 2,4.)  Mail at the prison is divided into two categories - regular mail and confidential mail, which includes mail from the courts. (Id. ¶ 3.)

4

Prison regulations require that confidential mail be processed separately from regular mail. Incoming mail is labeled "confidential" before it reaches the housing unit. Upon receipt of incoming legal mail at the housing unit, the officer takes the unopened mail to the inmate's cell and has the inmate sign a form acknowledging receipt of confidential mail. In the inmate's presence, the officer opens the envelope, flips through and shakes the sheets of paper, and looks inside the envelope for any contraband. The mail is then given to the inmate. (Id. ¶ 5.)

An inmate sending out confidential mail must hand the officer the unsealed envelope. The officer checks for contraband by looking inside the envelope and separating and shaking the pages. The officer hands the letter and envelope back to the inmate, the inmate seals the envelope in the officer's presence, and the officer signs and dates the back of the envelope before placing it in the outgoing mail container. This limited search of confidential mail prevents inmates from sending or receiving contraband. (Id. ¶ 6.) Mail is usually exchanged through the food port of the cell door. (Castro Decl. ¶ 2; Frescura Decl. ¶ 2.)

The door of a SHU cell is solid steel with a small window and food port. Each cell is equipped with a light that is operated by the control booth officer. There is also a small window at the back of the cell. Inmates will often cover the light or windows to darken their cells. Visibility into a cell is very limited, especially when the cell light or windows are covered. For the safety of officers, prison policies and regulations require that the cell light and windows remain uncovered. An officer risks being "gassed," spit on, or grabbed if he opens the food port without clearly seeing the inmate beforehand. "Gassing" is when an inmate throws bodily fluids, such as excrement, urine, or blood, at an officer. (Castro Decl. ¶ 5; Frescura Decl. ¶ 9.)

Defendants' custom and practice, which was consistent with prison regulations, was to not distribute mail to an inmate or take mail from an inmate if the cell light was covered or the lighting was blocked because the lack of visibility into the cell created an unsafe condition and compromised safety. This was particularly true when the inmate, such as Plaintiff, had a history of gassing officers. (Castro Decl. ¶¶ 4,6; Frescura Decl. ¶¶ 8, 10.)

Regarding the specific allegations in this action, Plaintiff alleges that Castro and Frescura tampered with his mail in retaliation for filing grievances and complaints against prison staff. (Am. Compl. ¶ IV.)  Plaintiff contends that, on three or four occasions, Castro refused to give him his mail because the light in Plaintiff's cell was off. (Rowe Dep. 46:20-48:19.)  Plaintiff stated that he received his personal mail about a week later. (Id.)

Plaintiff contends that in another incident, Castro opened his legal mail, searched it for contraband, and read the letter before giving it to him. (Rowe Dep. 54:12-19.)  A few weeks later, Castro again refused to give Plaintiff his mail because his cell light was turned off. (Rowe Dep. 61:7-63:5.)  Plaintiff concedes that he received his mail about three or four days later. (Rowe Dep. 61:24-62:2.)

Defendants have submitted evidence that establishes the lack of existence of a triable issue of fact regarding whether they read, withheld, or censored Plaintiff's mail in retaliation for Plaintiff's filing of inmate grievances.  Plaintiff's deposition establishes that on the three to four occasions that Castro refused to give him his personal mail, he did so because the light in Plaintiff's cell was off. (Rowe Dep. 49:13-16.)  Defendants have established that delivering mail to an inmate in a darkened cell presents a safety hazard to custody staff.  An officer risks being "gassed," spit on, or grabbed if he opens the food port without clearly seeing the inmate beforehand.  "Gassing" is when an inmate throws bodily fluids, such as excrement, urine, or blood, at an officer. (Castro Decl. ¶ 5; Frescura Decl. ¶ 9.)  Further, Plaintiff concedes that he eventually received the mail about a week later. (Rowe Dep. 48:17-19.)

In his deposition, Plaintiff was specifically asked if Defendant Frescura had any other motive to deprive Plaintiff of his mail:

> Q.  Okay. Before we go to Castro – I apologize. Was there any other reason that you can think of that Frescura denied you the mail from your family?
>
> A.  Because my light was off. That's it.
>
> Q.  Okay. You don't think there was any other ulterior motive Frescura had?

6

| | | |
|---|---|---|
|1| A. | No.  He told me that himself – |
|2| Q. | Okay. |
|3| A. | – that it was because my cell light was off. |

(Rowe Dep. 44:9-18.)

Plaintiff contends that Frescura refused to send out his legal mail on four occasions.  On three of those instances, Plaintiff claimed that Frescura read the letters and determined they were not legal mail, and on another occasion, Frescura just walked past his cell without picking up his mail. (Rowe Dep. 14:6-15:19, 20:1-23, 76:18-78:6, 80:23-81:19.)   Plaintiff admitted that Frescura subsequently sent out the letters and that Plaintiff suffered no harm from the delay in sending them out.  (Rowe Dep. 15:20-24, 19:4-6, 22:20-23:18, 78:7-14, 79:5-18, 82:17-23.)  Plaintiff concedes that he has no evidence that Frescura's refusal to send out his legal mail was in retaliation for filing complaints or lawsuits against prison staff.  (Rowe Dep. 34:2-35:25, 36:1-18, 79:19-22, 83:4-16.)

Plaintiff further claims that Frescura refused to give him a "few letters," but Plaintiff admitted that Frescura did not give him his personal mail because Plaintiff refused to turn on his cell light.  Plaintiff got the letters a couple of days later.  (Rowe Dep. 38:4-41:14.)  Castro and Frescura both declare that they never tampered with Plaintiff's mail, nor did they refuse to give him or send out his mail in retaliation for filing his prison grievances against them or other prison staff.  (Castro Decl. ¶ 3; Frescura Decl. ¶ 7.)

Regarding Defendant Castro's conduct, Plaintiff concedes that he has no evidence, other than his own statement that "I just figured," that Castro withheld Plaintiff's mail in retaliation for filing inmate grievances.  (Rowe De. 50:2.)    When asked what made him figure that, Plaintiff responded with a generalized statement: "because how they do it in the prison system.  He just like Frescura, you know, when somebody filed a complaint, you know, that's when they get to picking on you."  (Rowe Dep. 50:4-6.)

As to the first incident that Castro allegedly opened his legal mail, Plaintiff admitted that

7

1  Castro did not delay in giving him the letter, and that Castro only had the letter, which was about
2  fifteen pages long, for ten to fifteen seconds before he handed it to Plaintiff. (Rowe Dep. 55:16-
3  22, 58:1-10.) Plaintiff admitted that Castro was being "nosey," and concedes that he has no
4  evidence that Castro purportedly read his legal mail in retaliation for any complaints he may have
5  filed. (Rowe Dep. 58:21-60:24.)

6       As to the second incident, Rowe contended that about a few weeks after the first incident
7  regarding his legal mail, Castro refused to give him his legal mail because his cell light was
8  turned off. (Rowe Dep. 61:7-63:5.)  Plaintiff admits he received his legal mail about three or
9  four days later. (Rowe Dep. 61:24-62:2.) Plaintiff concedes that he has no evidence that Castro's
10 refusal to give him his legal mail was retaliatory.  (Rowe Dep. 63:13-64:3.)

11     **A.**    **Absence of Adverse Action**

12      Adverse action is action that "would chill a person of ordinary firmness" from engaging
13 in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v.
14 Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir.
15 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d
16 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411
17 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v.
18 Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are
19 protected activities and it is impermissible for prison officials to retaliate against inmates for
20 engaging in theses activities.  However, not every allegedly adverse action will be sufficient to
21 support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit
22 addressing First Amendment retaliation claims involve situations where the action taken by the
23 defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation
24 and destruction of property, initiation of a prison transfer, and assault in retaliation for filing
25 grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in
26 administrative segregation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.

2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

Defendants' evidence clearly establishes the lack of existence of a triable issue of fact - evidence that establishes that Plaintiff's mail was not refused, read or censored in response to his filing of inmate grievances. As noted above, Plaintiff concedes he has no evidence, other than his own subjective belief, that Defendants' actions were motivated by his filing of inmate grievances. Plaintiff concedes that his mail was eventually delivered, and that he indeed refused to turn on his cell light. Defendants' declarations establish that they "never tampered with Plaintiff's mail, nor did they refuse to give him or send out his mail in retaliation for filing his prison grievances against them or other prison staff." (Castro Decl. ¶ 3; Frescura Decl. ¶ 7.) The Court finds that Defendants have met their burden on summary judgment. The evidence submitted by Defendants establishes, without dispute, that they never took adverse action against Plaintiff.

Plaintiff's opposition, filed on October 28, 2010, consists of 6 pages of argument, not made under penalty of perjury.[2] In his declaration, Plaintiff declares that "usually mail is slid though the side of the cell door through an opening and there's no need to turn on light for any safety reason." (Rowe decl. 1:24-26.) Plaintiff contends that "using plaintiff's background pass [sic] is unfair as it has nothing to do with this case." (Id. at 2:8-9.) Although Plaintiff states

---

[2] On September 22, 2010, Plaintiff filed a document titled as "dispositive motion." This document is a statement by Plaintiff, made under penalty of perjury. The Court will consider this as a declaration in support of Plaintiff's opposition to summary judgment. The Court will refer to this document as Plaintiff's declaration.

9

that he is willing to take a polygraph test to "prove facts that defendants did act in violation," he has not come forward with any evidence that establishes a triable issue of fact regarding any adverse action taken by defendants. Plaintiff's evidence, at most, establishes that Frescura could have slid Plaintiff's mail in through the side of the door. Such evidence, however, fails to establish that any of the Defendants engaged in adverse action within the meaning of the First Amendment.

### B. Legitimate Correctional Purpose

Defendants' declarations establish that, for reasons of officer safety, the normal practice and procedure is to refuse mail delivery if an inmate's cell light or window is covered. In his deposition, Plaintiff concedes that, regarding the events at issue in this lawsuit, he refused to turn his cell light on. Further, Defendants' evidence establishes, without dispute, that Plaintiff had two prior convictions for gassing correctional officers.[3] Defendant Frescura's declaration establishes that because of Plaintiff's abuse of the confidential mail procedures, Frescura merely read the name of the addressee on the envelope to determine whether the mail qualified as "confidential" under the prison regulations, and if he deemed the mail improperly labeled, he would give the mail back to the inmate and afford him to send it out as regular mail. (Frescura Decl. ¶ 12.)

"To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct. . . . and [to do so, a plaintiff] need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [a defendant's] intent [behind

---

[3] Defendants request the Court to take judicial notice of their Exhibits B and C. Exhibit B is a copy of criminal minutes from a hearing in Imperial County Superior Court on November 17, 1998. At that hearing, Plaintiff pled guilty to a simple battery "gassing" of an officer. Exhibit C is an abstract of judgment - prison commitment entered in Kings County Superior Court on November 8, 2001, indicating that Plaintiff was convicted by a jury of 2 counts of assault by a prisoner on a non-prisoner. Plaintiff was sentenced to 50 years to life with the possibility of parole. The Court may take judicial notice of court records in another case. Fed.R.Evid. 201; see United States v. Wilson, 631 F.2d 118, 119 (9th Cir.1980) (stating that a court may take judicial notice of court records in another case). Defendants' request is therefore granted.

1  their allegedly offending actions]." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009)
2  (citations and quotations omitted). Defendants' declarations establish that Plaintiff refused to
3  turn uncover his cell light, and Frescura's declaration establishes that Plaintiff abused the
4  confidential mail procedures. Defendants have therefore come forward with evidence that
5  establishes the lack of existence of a triable issue of fact regarding their motivation.

6  As noted above, the only evidence offered by Plaintiff is his declaration that Frescura
7  could have slid Plaintiff's mail through the side of the door, obviating the need to have the light
8  on. Defendants, trained correctional officers, have declared that having the light on when
9  delivering mail through the opening in the cell door is a legitimate security measure. Plaintiff's
10 view that mail could have been slid through the side of the door does not constitute evidence that
11 Defendants acted without a legitimate correctional purpose. Plaintiff's evidence establishes, at
12 most, a disagreement that having the light off posed a security risk. Such evidence does not
13 establish a triable issue of fact regarding whether Defendants acted with a legitimate correctional
14 purpose.

**C. Chilling**

16  The Ninth Circuit in Rhodes held that an objective standard governs the chilling inquiry;
17 a plaintiff does not have to show that "his speech was actually inhibited or suppressed," but
18 rather that the adverse action at issue "would chill or silence a person of ordinary firmness from
19 future First Amendment activities." Brodheim 584 F.3d at 1271, citing Rhodes, 408 F.3d at 568-
20 69. In his deposition, Plaintiff concedes that he suffered no harm or that his willingness to
21 exercise his protected rights was not chilled as a result of Defendants' actions concerning his
22 mail. Plaintiff was asked directly if his ability to litigate was affected:

> Q: Okay. Did Frescura's actions ever prevent you from filing an appeal?
>
> A: No.
>
> Q: Okay. Did Castro's actions prevent you in bringing any

|   |     |                                                                                                                          |
|---|-----|--------------------------------------------------------------------------------------------------------------------------|
|   |     | cases to court?                                                                                                          |
|   | A:  | I don't understand what you are saying.                                                                                  |
|   | Q:  | I just wanted to see if their tampering of your mail prevented you from filing lawsuits or bringing motions in lawsuits. |
|   | A:  | No, I kept doing it.                                                                                                     |
|   | Q:  | Okay. Did Frescura's actions in tampering with your mail impede your ability to bring lawsuits?                          |
|   | A:  | No.                                                                                                                      |
|   | Q:  | You kept filing lawsuits and litigating the cases you already had going even after Frescura tampered with your mail?     |
|   | A:  | Yes.                                                                                                                     |
|   | Q;  | And their actions did not impede your ability or your willingness to file 602s –                                         |
|   | A:  | No.                                                                                                                      |
|   | Q:  | – inmate appeals?                                                                                                        |
|   | A:  | No.                                                                                                                      |
|   | Q:  | Or your willingness or your ability to bring or litigate lawsuits?                                                       |
|   | A:  | No.                                                                                                                      |

(Rowe Dep. 87:5-89:21.)   This evidence establishes the lack of existence of a disputed issue of fact as to whether Plaintiff suffered any chilling of his ability to exercise his First Amendment rights as a result of Defendants' conduct.  Plaintiff offers no evidence that his ability to litigate, or to exercise his First Amendment rights, was actually chilled, or evidence that Defendants' conduct "would chill or silence a person of ordinary firmness from future First Amendment activities."  Rhodes, 408 F.3d at 568-69, quoting Mendocino Enviro. Center v. Mendocino Cty.,192 F.3d 1283, 1300 (9th Cir. 1999).

**D.     Causation**

To prevail on a retaliation claim, a plaintiff must show that his protected conduct was

12

"the 'substantial' or 'motivating' factor behind the defendant's conduct." Soranno's Gasco, Inc.v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Defendants' declarations establish, without dispute, that the motivating factor behind the refusal to deliver the mail was Plaintiff's refusal to turn his cell light on. Plaintiff offers no evidence that, taken in the light most favorable to him, presents a genuine issue of fact regarding Defendants' intentions in refusing to deliver Plaintiff's mail. The record is clear that Plaintiff concedes that he refused to turn his cell light on. Further, Defendants' declarations establish that it is a risk to security and officer safety to deliver mail to an inmate in a darkened cell.

In his opposition, Plaintiff argues that the safety concerns could have been addressed by delivering the mail through "the split in the side of the cell door." In his declaration, Plaintiff offers no evidence that Defendants' conduct was motivated by Plaintiff's filing of inmate grievances. Defendants' evidence indicates that Plaintiff refused to uncover his cell light, and had abused confidential mail procedures in the past. Plaintiff offers no evidence to the contrary.

## VI.   Conclusion and Summary

Defendants have come forward with evidence that they did not retaliate against Plaintiff for the exercise of Plaintiff's First Amendment activity. Defendants' evidence establishes that their conduct was motivated by legitimate security concerns, was not adverse to Plaintiff, and did not chill Plaintiff's ability to exercise his First Amendment rights. Plaintiff's evidence establishes, at most, a disagreement that having his cell light off during mail delivery poses a security risk. Such evidence does not create a triable issue of fact as to whether Defendants refused to deliver Plaintiff's mail in retaliation for the filing of inmate grievances. Defendants' motion should therefore be granted.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted. Judgment is entered in favor of Defendants and against Plaintiff. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:  May 26, 2011                                      /s/ Gary S. Austin
                                                   UNITED STATES MAGISTRATE JUDGE